BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

AUG -1 1977

PATRICIA D. HOWARD
CLERK OF THE PANEL

IN RE WESTINGHOUSE ELECTRIC CORPORATION )
URANIUM CONTRACT LITIGATION )
)
   S. Sherman Steinberg v. Westinghouse )
   Electric Corp., et al., S.D. New York, )
   Civil Action No. 75 Civ. 6317 )
)
   Franklin Freeman v. Westinghouse Electric )
   Corp., et al., S.D. New York, Civil Action )
   No. 76 Civ. 3352 )
)  DOCKET NO. 235
   Westinghouse Electric Corp. v. Rio Algom )
   Ltd., et al., N.D. Illinois, Civil Action )
   No. 76C3830 )
)
   Homestake Mining Co. v. Westinghouse Electric )
   Corp., N.D. California, Civil Action No. )
   C-76-2192 RFP )

IN RE MISCELLANEOUS SECURITIES LITIGATION )  DOCKET NO. 295
INVOLVING WESTINGHOUSE ELECTRIC CORPORATION )

OPINION AND ORDER
———————————————

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON, JOSEPH S. LORD, III*, STANLEY A. WEIGEL,
ANDREW A. CAFFREY AND ROY W. HARPER, JUDGES OF THE PANEL.
———————————————

PER CURIAM

I.   BACKGROUND

    A.   MDL-235

      On December 19, 1975, the Panel transferred twelve actions pursuant to 28 U.S.C. §1407 to the Eastern District of Virginia and, with the consent of that court, assigned them to the Honorable Robert R. Merhige, Jr., for coordinated or consolidated pretrial proceedings with an action pending there. In re Westinghouse Electric Corp. Uranium Contracts Litigation, 405 F. Supp. 316 (J.P.M.L. 1975). This group of actions has been

———————————————

\* Judge Lord took no part in the consideration or decision of this matter.

denominated MDL-235. Each of these actions was commenced by a different utility company against Westinghouse Electric Corp. Plaintiffs in each action allege that Westinghouse breached its contractual obligation for the present and/or future delivery of uranium to fuel nuclear power plants operated by the plaintiff-utilities or planned for operation in the future.[1/] Westinghouse pleads in defense in these actions that full performance of its contractual obligations for the supply of uranium has become "commercially impracticable" by reason of unforeseen developments resulting from the worldwide energy crisis and that accordingly Westinghouse is excused from such performance by reason of Section 2-615 of the Uniform Commercial Code. In addition, Westinghouse alleges in defense in these actions that the availability and price of uranium were manipulated by the anticompetitive activities of certain foreign governments, producers and cartels.

In transferring these actions under Section 1407, the Panel stated that:

> [T]here are some very significant common questions of fact among these actions. For example, a determination of the commercial impracticability of the present and future performance of Westinghouse's contractual obligations for the supply of uranium depends, in part, on the present and foreseeable supply of uranium on the open market and its cost. And even assuming that a large part of the §2-615 defenses rests on the separate contemplation of the individual parties negotiating each of the contracts, it is nonetheless clear that common factual questions will be raised concerning the effect of any alleged unforeseen intervening circumstances on

---

[1/] A similar action was commenced against Westinghouse by three different utilities in Pennsylvania state court. This action recently was settled.

> the price and supply of uranium. Thus, while we recognize that these actions involve some individual questions of fact pertaining to each utility's contractual relationship with Westinghouse, we are persuaded that sufficient commonality of factual issues exists to warrant transfer and that the most just and efficient conduct of these actions can best be achieved through centralized management by a single judge. Id. at 318-19.

Judge Merhige set a cutoff date of August 9, 1977, for the completion of all common discovery in MDL-235. Moreover, a final pretrial conference is set for August 29, 1977, and trial is scheduled to begin in some of the actions in the transferee district on September 12, 1977.

Because Steinberg, Freeman, and Rio Algom appeared to share questions of fact with the actions previously transferred to the Eastern District of Virginia, the Panel issued an order conditionally transferring Steinberg, Freeman and Rio Algom for inclusion in the Section 1407 proceedings pending there. Subsequently, the Panel issued an order to show cause why Homestake should not also be transferred to the Eastern District of Virginia pursuant to Section 1407.

The complaints in Steinberg and Freeman were commenced in the Southern District of New York under the federal securities statutes and allege that Westinghouse issued financial statements and other reports that were materially false and misleading because they omitted to disclose that Westinghouse had entered into the long-term uranium supply contracts involved in the actions in MDL-235. Plaintiff in Freeman also brings his action under the common law principles of fraud, waste, mismanagement

and breach of fiduciary duties. Westinghouse and Price Waterhouse & Co. are defendants in both Steinberg and Freeman. The Freeman complaint also names as defendants various officers and directors of Westinghouse. Both Steinberg and Freeman are brought as class actions. Plaintiff in Steinberg seeks to represent a class composed of all persons who purchased Westinghouse stock from February 2, 1973, through July 15, 1975, whereas the class in Freeman allegedly consists of all purchasers of Westinghouse securities from 1966 to July 14, 1975.

Rio Algom was commenced in the Northern District of Illinois under the federal antitrust laws by Westinghouse against twelve foreign and seventeen domestic corporations engaged in various aspects of the uranium business.[2/] Westinghouse alleges that beginning in 1972, certain of the foreign defendants formed a cartel that rigged bids, fixed prices, boycotted Westinghouse and other resellers of uranium, and divided portions of the world uranium market. The complaint also charges that the foreign producers promised not to sell uranium at prices lower than those prevailing in the United States as an inducement for domestic producers to drop their opposition to removal of the embargo on enrichment of foreign uranium, and that foreign producers then attempted to influence domestic producers to raise uranium prices in the United States. Finally, the complaint charges that uranium

---

[2/] The district court in the Northern District of Illinois has found nine of the twelve foreign defendants in default for failing to file answers to Westinghouse's complaint.

prices in the United States were in fact raised, allegedly as a result of concerted action on the part of domestic producers. Westinghouse seeks treble damages and injunctive relief.

Three defendants in Rio Algom, including defendant Homestake Mining Co., have filed counterclaims against Westinghouse, alleging that Westinghouse itself has violated the antitrust laws by: (1) tying its sale of uranium to its sale of nuclear reactors and fuel assemblies; (2) entering exclusive dealing contracts with utilities; and (3) attempting to monopolize or monopolizing the markets for nuclear reactors, fuel fabrication and fuel supplies. Two utility-plaintiffs in the actions in MDL-235 have made similar allegations.

Homestake Mining Co., a defendant in Rio Algom, filed Homestake against Westinghouse in the Northern District of California in early October 1976, shortly before Rio Algom was filed in the Northern District of Illinois. Homestake involves the rights and obligations of Homestake and Westinghouse under a 1974 contract (the Westinghouse-Homestake contract) by which Homestake agreed to sell 700,000 pounds of uranium to Westinghouse. The Westinghouse-Homestake contract states that the source of this uranium would be a contract between Homestake and a French corporation, Uranex, and that Homestake would have no liability to Westinghouse for any breach of the Westinghouse-Homestake contract resulting from failure by Uranex to make delivery. The Westinghouse-Homestake contract further provides that in the event of failure or breach by Uranex,

Homestake's <u>obligation</u> to obtain performance by Uranex is limited to the pursuit of arbitration proceedings against Uranex, if requested to do so by Westinghouse and at Westinghouse's expense.

During 1975 and early 1976, Uranex allegedly informed Homestake that Uranex was unable or unwilling to deliver the uranium under their contract. Homestake allegedly reported this development to Westinghouse, but Westinghouse took no action as a result of this information. In August 1976, Homestake tendered to Westinghouse a proposed amendment to the Westinghouse-Homestake contract reflecting certain changes Homestake allegedly had been compelled to accept as a condition of securing further deliveries of uranium from Uranex. The amendment allegedly included a three-fold price increase demanded by Uranex, and a waiver of all profit by Homestake. Westinghouse allegedly rejected this amendment.

Thereafter, Homestake filed its action against Westinghouse in the Northern District of California, seeking declaratory and injunctive relief. Basically, Homestake prays for a declaration that, because of Uranex's failure or refusal to perform its contract with Homestake, Homestake's obligation to deliver uranium to Westinghouse under the Westinghouse-Homestake contract was terminated. Westinghouse has counterclaimed against Homestake in this action for breach of contract and unjust enrichment. In addition, Westinghouse has raised the defense of "unclean hands" against Homestake, alleging that Homestake participated in the antitrust conspiracy alleged in Westinghouse's complaint in <u>Rio Algom</u>.

B. MDL-295

Westinghouse and Price Waterhouse have moved the Panel pursuant to Section 1407 to transfer four actions pending in two federal districts to the Southern District of New York for coordinated or consolidated pretrial proceedings with two actions pending there. These six actions are: Steinberg and Freeman, which are subject to conditional transfer orders in MDL-235, in the Southern District of New York; Simon[3] and Roth in the Eastern District of Pennsylvania; and Lemberger[4] and Zeit in the Eastern District of New York.

All six actions are brought by shareholders of Westinghouse. The plaintiffs in Steinberg, Freeman, Simon, Roth and Zeit each bring their respective actions on behalf of a class of individuals who purchased Westinghouse securities during overlapping periods (Steinberg, February 2, 1973 to July 15, 1975, see p. 4 supra; Freeman, 1966 to July 14, 1975, see p. 4 supra; Simon and Roth, December 7, 1971 to December 1, 1975; Zeit, December 7, 1971 to December 21, 1975). On January 26, 1977, a class was certified in Simon consisting of purchasers of Westinghouse common stock during the period from December 7, 1971 to October 30, 1974. Simon, et al. v. Westinghouse Electric Corp., et al., 73 F.R.D. 480

---

[3] Plaintiff Simon sought leave to intervene in Steinberg in the Southern District of New York, but intervention was denied because Simon already was prosecuting his claims in the Eastern District of Pennsylvania.

[4] In November 1976, the Honorable Jack B. Weinstein denied Westinghouse's motion to transfer Lemberger from the Eastern District of New York to the Eastern District of Pennsylvania under 28 U.S.C. §1404(a).

(E.D. Pa. 1977). Class determinations have not yet been made in the other actions, however. The plaintiffs in the sixth action, Lemberger, which is not brought as a class action, were the controlling shareholders of Host Enterprises, Inc. (Host), who exchanged their shares in Host for shares of Westinghouse in connection with the merger of Host with a wholly-owned subsidiary of Westinghouse, Westhost, Inc., in August 1972. The plaintiff in Ziet acquired her Westinghouse shares in the same manner as the plaintiffs in Lemberger. Plaintiff in Ziet brings her action on behalf of a class of certain Host shareholders who acquired Westinghouse shares as a result of the Host-Westhost merger, as well as on behalf of a class of all purchasers of Westinghouse securities from December 7, 1971 to December 21, 1975.

The complaints in all six actions allege that the financial statements and other reports disseminated by Westinghouse during overlapping periods of time were materially false and misleading in violation of the federal securities statutes and that these allegedly false and misleading statements and reports artificially inflated the market price or exchange value of Westinghouse securities. The complaints in all actions except Lemberger refer specifically to nondisclosures and misrepresentations relating to Westinghouse's long-term contracts for the supply of uranium as a purported cause of the alleged artificial inflation of the value of Westinghouse stock. The complaints in Simon, Roth, Ziet and Lemberger include allegations of certain other misrepresentations in and omissions from Westinghouse's financial statements and reports. These additional allegations involve,

inter alia, misrepresentations and omissions concerning: 1) Westinghouse's water quality control operations; 2) Westinghouse's cash flow and loan problems; 3) Westinghouse's illegal political contributions and payments; 4) Westinghouse's problems concerning sales and performance of turbine generators; and 5) Westinghouse's sale of its Major Appliances Division in 1974.[5]

Westinghouse is named as a defendant in all six actions, and Price Waterhouse is named as a defendant in Steinberg, Freeman, Simon and Roth. Freeman, Simon and Roth also include certain officers and directors of Westinghouse as defendants. Westinghouse's investment bankers are named as defendants only in the Simon action, while Westhost, Inc., the wholly-owned Westinghouse subsidiary that merged with Host, is named as a defendant only in the Lemberger and Ziet actions.

II. SUMMARY OF THE PARTIES' POSITIONS

A. MDL-235

Westinghouse and Price Waterhouse move the Panel to vacate the orders conditionally transferring Steinberg and Freeman to the Eastern District of Virginia. All responding parties concur.

Unlike its position concerning Steinberg and Freeman, Westinghouse favors transfer of Rio Algom and Homestake to

---

[5] In re Westinghouse Electric Corp. Securities Fraud Litigation, MDL-231 (J.P.M.L., filed December 9, 1975), involved allegations in three actions that Westinghouse violated the federal securities statutes concerning the sale of its Major Appliances Division in 1974. The Section 1407 motion in MDL-231 became moot when two of the three actions in that litigation were transferred pursuant to 28 U.S.C. §1404(a) to the Western District of Pennsylvania, wherein the third action was pending.

the Eastern District of Virginia. All other responding parties oppose transfer of Rio Algom and Homestake, however.

   B. MDL-295

Only plaintiffs in Lemberger and Ziet disagree with movants that Steinberg, Freeman, Roth, Simon, Lemberger, and Ziet belong in a single district for coordinated or consolidated pretrial proceedings. Those plaintiffs oppose transfer of their actions from the Eastern District of New York. In addition, each of the three districts wherein these six actions are pending has been suggested by various parties as an appropriate transferee district.

III. HOLDING

   A. MDL-235

Although Rio Algom, Steinberg, Freeman and Homestake each may share some questions of fact with the actions in MDL-235, we have concluded that the inclusion of Rio Algom, Steinberg, Freeman and Homestake in MDL-235 would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of that litigation. Accordingly, the conditional transfer orders in Rio Algom, Steinberg and Freeman are vacated, and the show cause order regarding transfer of Homestake is vacated.

   B. MDL-295

We find that Steinberg, Freeman, Simon, Roth, Lemberger and Ziet raise common questions of fact and that transfer of Steinberg, Freeman, Simon and Roth under Section 1407 to the

-11-

Eastern District of New York for coordinated or consolidated pretrial proceedings with Lemberger and Ziet will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this group of actions.

IV. ARGUMENTS AND REASONING

    A. MDL-235

Westinghouse, the only party that favors transfer of Rio Algom to the Eastern District of Virginia, contends that the Panel's original opinion and order in MDL-235 clearly suggests that Rio Algom should be included in MDL-235. Westinghouse states that the Panel recognized that the actions in MDL-235 involve the issue of whether unforeseen contingencies occurred to render the performance by Westinghouse of its uranium supply contracts "commercially impracticable" under Section 2-615 of the Uniform Commercial Code, and found that "common factual questions will be raised concerning the effect of any alleged unforeseen intervening circumstances on the price and supply of uranium." In re Westinghouse Electric Corp. Uranium Contract Litigation, supra, 405 F. Supp. at 319. One of the "intervening circumstances" that Westinghouse has raised in its answers to the complaints in MDL-235 is the alleged illegal agreement among uranium producers to manipulate the price and availability of uranium, Westinghouse points out. Evidence of this alleged conspiracy is central both to Rio Algom and the actions in MDL-235, Westinghouse stresses. Westinghouse argues that if there has, in fact, been an international conspiracy to raise prices and manipulate the uranium market, then proof of this conspiracy might not only

-12-

establish Westinghouse's Section 2-615 defense in MDL-235 but also provide the basis for relief to Westinghouse in Rio Algom. Although Westinghouse concedes that transfer of Rio Algom to MDL-235 would delay trial of the actions in MDL-235, Westinghouse maintains that unless Rio Algom is included in MDL-235 resolution of a nationally important issue will be complicated by unnecessarily repetitive discovery and trials with the possibility of conflicting results. As an alternative to transferring Rio Algom to the Eastern District of Virginia for inclusion in MDL-235, Westinghouse suggests that the Panel order expedited discovery and trial in Rio Algom in the Northern District of Illinois.

 Westinghouse's main argument for including Homestake in MDL-235 is that Westinghouse's "unclean hands" defense in Homestake involves the issue of Homestake's participation in the international conspiracy raised by Westinghouse in defense of the actions in MDL-235.

 While we recognize that the allegations of a uranium price-fixing and market manipulation conspiracy in Rio Algom and the actions in MDL-235 involve common questions of fact, on the basis of the record before us we are not convinced that these conspiracy issues predominate over the contractual issues that form the basis of MDL-235. Moreover, although Westinghouse's "unclean hands" defense in Homestake may share questions of fact with Westinghouse's defense in the actions in MDL-235 concerning the alleged international conspiracy, the issues in

Homestake are basically unique to that action because they involve the contractual relationships between Westinghouse and Homestake as well as Homestake and Uranex. Furthermore, we agree with all responding parties that the fundamental factual issues raised by Steinberg and Freeman are distinct from those involved in the actions in MDL-235. The complaints in Steinberg and Freeman, brought under the federal securities laws, focus on Westinghouse's alleged nondisclosures of the long-term uranium supply contracts and its inability to meet those contracts, as well as the effect those nondisclosures had on the value of Westinghouse stock. In MDL-235, on the other hand, the utility-plaintiffs seek to recover damages stemming from the alleged breach of certain of the uranium supply contracts. While Steinberg and Freeman may share some questions of fact with the actions in MDL-235 because all these actions relate in some manner to Westinghouse's nuclear energy business, we are persuaded that any common factual issues do not predominate. In any event, unlike Rio Algom, Homestake, Steinberg and Freeman, trial is imminent in the actions in MDL-235. Under these circumstances, we believe that the purposes of Section 1407 can best be achieved by allowing the actions in MDL-235 to be left alone. See In re Celotex Corporation "Technifoam" Products Liability Litigation, 68 F.R.D. 502, 505 (J.P.M.L. 1975).

Westinghouse's alternative proposal that the Panel order expedited discovery and trial in Rio Algom is beyond the Panel's authority under Section 1407. The Panel has neither the power nor the inclination to

-14-

dictate in any way the manner in which judges process actions pending before them. See In re Molinaro/Catanzaro Patent Litigation, 402 F. Supp. 1404, 1406 (J.P.M.L. 1975); In re Plumbing Fixtures Cases, 298 F. Supp. 484, 489 (J.P.M.L. 1968).

    B.  MDL-295

With the exception of plaintiffs in Lemberger and Ziet, all responding parties recognize that the six actions in MDL-295 involve many common questions of fact. Plaintiffs in Lemberger and Ziet argue that although Ziet shares some questions of fact concerning defendants' allegedly fraudulent conduct with Steinberg, Freeman, Roth and Simon, the predominant issues in Ziet and Lemberger are unique because they involve the merger of Host into Westhost.

A thorough review of the complaints in Roth, Simon, Lemberger, Ziet, Steinberg and Freeman reveals that these actions all involve numerous common questions of fact concerning defendants' allegedly fraudulent activities that resulted in artificially inflating the value of Westinghouse securities. Although plaintiffs in Lemberger and Ziet acquired their Westinghouse stock pursuant to a merger and not on the open market, nearly all the specific misrepresentations and omissions alleged by plaintiffs in Lemberger and Ziet are also complained of in one or more of the other actions in MDL-295. Furthermore, the period during which the Host-Westhost merger negotiations occurred (1972) fits squarely within the period complained of in the Freeman, Steinberg, Simon and Roth complaints.

-15-

In addition, the purported classes in <u>Roth</u>, <u>Ziet</u>, <u>Steinberg</u> and <u>Freeman</u> and the determined class in <u>Simon</u> all overlap. Thus, Section 1407 proceedings will not only avoid the possibility of duplicative discovery but will also prevent inconsistent class determinations and other pretrial rulings. Should any unique factual issues concerning the Host-Westhost merger, or any other aspect of MDL-295, arise in the transferee district, the transferee judge has the flexibility to design a pretrial program that will accommodate the needs of each party for any unique discovery or judicial attention concurrently with common pretrial matters. <u>See</u> <u>In re Republic National-Reality Equities Securities Litigation</u>, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974).

We are of the view that each of the three districts wherein the various actions in MDL-295 are pending may be described as an appropriate transferee forum. On balance, however, we are persuaded that the Eastern District of New York is most preferable. Four of the six actions in MDL-295 already are pending in districts in the New York City area. And a majority of the parties prefer a transferee district in the New York City area.

IT IS THEREFORE ORDERED that the conditional transfer orders regarding the actions entitled <u>S. Sherman Steinberg v. Westinghouse Electric Corp., et. al.</u>, S. D. New York, Civil Action No. 75-Civ-6317; <u>Franklin Freeman v. Westinghouse Electric Corp., et. al.</u>, S. D. New York, Civil Action No. 76-Civ-3352; and <u>Westinghouse Electric Corp. v. Rio Algom Ltd., et. al.</u>, N.D. Illinois,

Civil Action No. 76C3830, be, and the same hereby are, **VACATED**.

IT IS FURTHER ORDERED that the order to show cause regarding the action entitled <u>Homestake Mining Co. v. Westinghouse Electric Corp.</u>, N. D. California, Civil Action No. C-76-2192-RFP, be, and the same hereby is, VACATED.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Eastern District of New York be, and the same hereby are, transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable Jack B. Weinstein for coordinated or consolidated pretrial proceedings with the actions already pending there and listed on Schedule A.

## SCHEDULE A

Docket No. 295

| EASTERN DISTRICT OF NEW YORK | Civil Action No. |
|---|---|
| Milton Lemberger, et al. v. Westinghouse Electric Corp., et al. | 76-552 |
| Judith Ziet v. Westinghouse Electric Corp., et al. | 76-2031 |

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| S. Sherman Steinberg v. Westinghouse Electric Corp., et al. | 75-Civ-6317 |
| Franklin Freeman v. Westinghouse Electric Corp., et al. | 76-Civ-3352 |

### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M. Simon, et al. v. Westinghouse Electric Corp., et al. | 76-874 |
| Martin Roth v. Westinghouse Electric Corp., et al. | 76-3605 |